UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PHILLIP STUBLENSKY,                           THE HON.
'

    Plaintiff,                             CASE NO.

VS.                                           MAG.

GENERAL MOTORS COMPANY,

    Defendant.

_____/

LEDERMANLAW, PC
BY: Howard Yale Lederman (P36840)
Attorneys for Plaintiff
838 West Long Lake Road, Suite 100
Bloomfield Hills, Michigan 48302
(248) 792-0476
hledermanlaw@gmail.com

_____/

## COMPLAINT

PLAINTIFF PHILLIP STUBLENSKY [PLAINTIFF STUBLENSKY OR MR.

STUBLENSKY], by his undersigned attorneys, LEDERMANLAW, PC, complains

against Defendant General Motors Company [DEFENDANT GMC] under U.S. Civil

Rights Act of 1964, Title VII, 42 U.S.C. Sec. 200e-2, the U.S Age Discrimination in

Employment Act of 1990 as amended, 29 U.S.C. Sec. 621 et seq., and the Michigan

Elliott-Larsen Civil Rights Act, MCL 37.2200 et seq., for age and race discrimination as

follows:

### PARTIES, JURISDICTION AND VENUE

1. At all relevant times, Plaintiff Stublensky has been a resident of the City of

1

Rochester Hills, County of Oakland, State of Michigan and thus a resident of the Eastern District of Michigan, Southern Division.

2. At all relevant times, on information and belief, Defendant GMC has had its national and international headquarters in the City of Detroit, County of Wayne, State of Michigan and its resident agent in the City of Bingham Farms, County of Oakland, State of Michigan and thus in the Eastern District of Michigan, Southern Division. (See Exhibit 1, GMC Website Headquarters Address Document & Michigan Department of Licensing and Regulatory Affairs Corporate Search Document)

3. At all relevant times, on information and belief, Defendant GMC has done substantial business in the Eastern District of Michigan, Southern Division.

4. At all relevant times, on information and belief, Defendant GMC decided on and implemented the relevant discriminatory policies and practices in the Eastern District of Michigan, Southern Division, including but not limited to the City of Detroit, County of Wayne, State of Michigan and the City of Pontiac, County of Oakland, State of Michigan.

5. Plaintiff Stublensky claims substantial damages, excluding claimed attorney fees, interest, and costs.

6. Based on paragraphs 1-5 above, under 28 U.S.C. Sec. 1331, this Court has federal question subject matter jurisdiction over this action.

7. Based on paragraphs 1-5 above, this Court has personal jurisdiction over Defendant GMC.

8. Based on paragraphs 1-5 above, under 28 U.S.C. Sec. 1391(b)(2), the Eastern

District of Michigan, Southern Division, is proper venue.

## FACTUAL ALLEGATIONS

9.   Plaintiff Stublensky incorporates his above Parties, Jurisdiction, and Venue Allegations into his Factual Allegations by reference.

10. From on or about November 18, 1972 through on or about January 1, 2003 and from on or about January 11, 2011 through the present, Plaintiff Sublensky has been a Defendant GMC employee.

11. From 1980 to 1999, Mr. Stublensky was a Defendant GMC General Supervisor.

12. From 1999 through on or about January 1, 2003, Mr. Stublensky was a Delphi Corporation General Supervisor.

13. During the above time, on information and belief, Delphi Corporation was affiliated with Defendant GMC in some form.

14. On or about September 1, 2017, Mr. Stublensky became an Operations Supervisor at the GMC Pontiac CCA After-Care Facility **[The GMC Facility]**.

15.  On or about May 6, 2024, when the age and racial discrimination began, Mr. Stublensky was 74 years old and working full time for Defendant GMC as an Operations Supervisor at the GMC Facility. He was supervising the Deconsolidation Department on the afternoon shift.

16. On or about May 6, 2024, Demetrius McGee **[Mr. McGee]** was an Operations Supervisor at the GMC Facility supervising the K Department.

17. On information and belief, on or about May 6, 2024, Mr. Gee was 25 – years

3

old.

18. Mr. Stublensky was a white supervisor, and Mr. McGee was a black supervisor.

19. On or about May 6, 2024, Jeanine Miracle was a Deconsolidation Department employee working on the afternoon shift under Mr. Stublensky.

20. On information belief, in April 2024, Mr. McGee began pressuring Ms. Miracle to stop working under Mr. Stublensky and start working under him.

21. In May 2024, Ms. Miracle went on a one-week vacation.

22. Until Ms. Miracle had returned from her vacation, Mr. Stublensky had not heard anything about Mr. McGee's pressure campaign.

23. After Ms. Miracle had returned from her vacation, on or about May 20, 2024, around 12:00 Noon, Mr. Stublensky was checking his Time and Attendance Records for his upcoming shift employees.

24. Mr. Stublensky found that someone had changed her shift without notifying him.

25. At about 1:40 PM, Mr. Stublensky arrive at the GMC Facility.

26. At about 1:50 PM, Mr. Stublensky saw Ms. Miracle in his work area putting her purse and other personal effects into her work cabinet and removing her work tools from her work cabinet.

27. Ms. Miracle's normal afternoon shift start time was 3:00 PM.

28. So, Ms. Miracle was an hour and ten minutes early.

29. When Mr. Stublensky asked her why she was there early and without his

authorization to be there so early, Ms. Miracle responded that Mr. McGee had told her that she would be working under him that day, and that her shift would begin at 2:00 PM.

30. Mr. Stublensky responded that he did not know anything about Ms. Miracle going to work under Mr. McGee.

31. Ms. Miracle then left for Mr. McGee's work area.

32. On that day, Ms. Miracle worked under Mr. McGee in his work area.

33. So, Mr. Stublensky was one employee short, and he had the same workload to accomplish that day.

34. On or about May 20, 2024, Mr. Stublensky, Mr. McGee, and other GMC Facility Operations Supervisors attended the regular 2:40 PM Shift Start meeting.

35. There, Mr. Stublensky raised the subject of Ms. Miracle going to work under Mr. McGee: Mr. Stublensky asked Mr. McGee: "Did you change Jeanine's work span [shift]?" Mr. McGee replied: "Yes." Mr. Stublensky asked Mr. McGee: "What gives you the right to change Jeanine's shift without my knowledge?" Mr. McGee responded: "If you don't remember what I told you yesterday, that's no my issue." Mr. Stublensky replied: "You didn't say anything to me yesterday." Mr. McGee responded: "If you don't remember what I told you yesterday because you're old, that's not my problem."

36. The discussion continued for a while. Then, Mr. McGee sat back in his chair and started laughing at Mr. Stublensky. Mr. McGee repeated that Mr. Stublensky is old several times.

37. Mr. Stublensky repeated that he [Mr. McGee] did not say

anything the day before and left.

38. After working her shift, Ms. Miracle returned to her work cabinet in Mr. Stublensky's area to pick up her purse and personal effects.

39. When she arrived, Mr. Stublensky was there. He approached her and asked her: "Why did you not let me know about you working for Mr. McGee? I thought we had a much better relationship than that."

40. Ms. Miracle responded that Mr. McGee had been bullying her for about a month to come and work under him permanently. Ms. Miracle explained that Mr. McGee had told her that his group leader, Diane, was retiring, and he wanted Mr. Miracle to become his group leader. Ms. Miracle apologized to Mr. Stublensky for not letting him know about the above.

41. Later the same day, Mr. Stublensky's General Supervisor, Jason Beasley, asked Mr. Stublensky to come to his office. So, Mr. Stublensky went to his office. Mr. Beasley asked Mr. Stublensky what had happened the day before regarding Mr. McGee. Mr. Stublensky explained what had happened and cited the above events. Mr. Beasley responded that he would forward Mr. Stublensky's information to the GMC Facility's Human Relations Director, Ayana Allen. On information and belief, Ms. Allen did so.

42. About two weeks later, Mr. Beasley called Mr. Stublensky into a meeting in his [Mr. Beasley's] office. Besides Mr. Beasley and Mr. Stublensky, Ms. Allen was there via remote video technology, and Lynn Behrens, the Facility Manger, was there in person.

43. There, Ms. Allen told Mr. Stublensky that as a result of the above events, he

could lose his annual bonus and his annual merit pay increase, and that they would review his performance monthly on how he was "progressing."

44. "Progressing" meant how well Mr. Stublensky was "getting used to" a regime of racial and age discrimination.

45. At the meeting, Ms. Allen read the GMC Anti-Harassment Policy. (Exhibit 4)

46. Regarding employee transfers, the GMC Facility had the following regular written policy practice: If an employee wants to be considered for another job for one day, the employee must sign a backup list confirming his/her availability. Every department posts the backup list. The department the employee is responsible for training or making sure that the employee has the necessary training to do the work. If an Operations Supervisor needs an employee to fill in for another employee for a day, the Operations Supervisor will ask for a listed employee in order of seniority and training.

47. Then, the two Operations Supervisors would discuss the transfer among themselves and decide whether the employee would transfer to the new area.

48. So, the transfer was supposed to be not a unilateral decision but a joint decision.

49. But the above decision regarding Ms. Miracle was not a joint decision but a unilateral decision because of the prevailing racial and age discrimination regime.

50. Most transfers occurred under the above regular practice.

51. But due to the prevailing racial and age discrimination regime, Ms. Miracle's

transfer did not occur under the above regular practice.

52. Rather, the GMC Facility discriminated for Mr. McGee and against Mr. Stublensky based on Mr. Stublensky's age and race.

53. On February 7, 2025, Mr. Stublensky claimed racial and age discrimination to the U.S. Equal Opportunity Commission **[EEOC]**. (Exhibit 2, 2/7/25 Plaintiff Stublensky EEOC Claim No. 471-2025-02731)

54. On April 23, 2026, the EEOC issued a Right to Sue Notice. (Exhibit 3, 11/21/24 EEOC Claim No. 471-2025-01086 Right to Sue Notice)

55. As proximate results of Defendant GMC's above racial and age discrimination, Plaintiff Stublensky has suffered substantial damages, including but not limited to:

> A. Compensatory damages, such as earnings and bonus pay.
>
> B. Lost Career Opportunities resulting from Defendant GMC's lowering of his annual performance evaluation to "Needs Improvement."
>
> C. Emotional damages, such as anxiety, depression, embarrassment, and humiliation.
>
> D. Litigation costs and attorney fees.

### COUNT I—US CIVIL RIGHTS ACT OF 1964-TITLE VII-RACIAL DISCRIMINATION—DISPARATE TREATMENT

56. Plaintiff Stublensky incorporates his above Parties, Jurisdiction, and Venue Allegations and his Factual Allegations into his Count I Allegations by reference.

57. At all relevant times, under Title VII, 42 USC Sec 2000e(k), Plaintiff Stublensky was an employee, and Defendant GMC was an employer.

8

58. At all relevant times, Defendant GMC acted through managers and supervisors as its agents.

59. As a white employee racial discrimination target and victim, Plaintiff Stublensky belonged to a protected group.

60. Under respondeat superior, Defendant GMC is liable for its agents' discrimination.

61. Defendant GMC's actions were intentional.

62. In contrast to at least one similarly situated black employee, Plaintiff Stublensky experienced disparate treatment from Defendant GMC based on his race.

63. Defendant GMC, through its agents, managers and supervisors, treated Plaintiff Stublensky differently from other similarly situated black employees regarding their work environment and other employment policies, practices, terms and conditions based on unlawful consideration of Plaintiff Stublensky's race.

64. As proximate results of Defendant GMC's unlawful Title VII disparate treatment racial discrimination, Plaintiff Stublensky has suffered the damages outlined in paragraph 55 above.

## COUNT II – MELCRA RACIAL DISCRIMINATION
### (DISPARATE TREATMENT)

65. Plaintiff Stublensky incorporates his above Parties, Jurisdiction, and Venue Allegations, his Factual Allegations, and his Count I Allegations into his Count II Allegations by reference.

66. At all relevant times, under the MELCRA, MCL 37.2101 et seq., Plaintiff Stublensky was an employee, and Defendant GMC was an employer.

9

67. At all relevant times, Defendant GMC acted through managers and supervisors as its agents.

68. As a white employee racial discrimination target and victim, Plaintiff Stublensky belonged to a protected group.

69. Under respondeat superior, Defendant GMC is liable for its agents' discrimination.

70. Defendant GMC's actions were intentional.

71. In contrast to at least one similarly situated black employee, Plaintiff Stublensky experienced disparate treatment from Defendant GMC based on his race.

72. Defendant GMC, through its agents, their managers and supervisors, treated Plaintiff Stublensky differently from other similarly situated black employees regarding their work environment and other employment policies, practices, terms and conditions based on unlawful consideration of Plaintiff Stublensky's race.

73. As proximate results of Defendant GMC's unlawful MELCRA disparate treatment racial discrimination, Plaintiff Stublensky has suffered the damages outlined in paragraph 55 above.

### COUNT III – US AGE DISCRIMINATION IN EMPLOYMENT ACT OF 1990 AS AMENDED-AGE DISCRIMINATION (DISPARATE TREATMENT)

74. Plaintiff Stublensky incorporates his above Parties, Jurisdiction, and Venue Allegations, his Factual Allegations, his Count I Allegations, and his Count II Allegations, into his Count III Allegations by reference.

75. At all relevant times, under the ADEA, 29 U.S.C. Sec. 621 et seq., Plaintiff Stublensky was an employee, and Defendant GMC was an employer.

76. At all relevant times, Defendant GMC acted through managers and supervisors as its agents.

77. As an employee above age 40 age discrimination target and victim, Plaintiff Stublensky belonged to a protected group.

78. Under respondeat superior, Defendant GMC is liable for its agents' discrimination.

79. Defendant GMC's actions were intentional.

80. In contrast to at least one similarly situated below age 40 employee, Plaintiff Stublensky experienced disparate treatment from Defendant GMC based on his age.

81. Defendant GMC, through its agents, managers and supervisors, treated Plaintiff Stublensky differently from other similarly situated below age 40 employees regarding their work environment and other employment policies, practices, terms and conditions based on unlawful consideration of Plaintiff Stublensky's age.

82. As proximate results of Defendant GMC's unlawful ADEA disparate treatment age discrimination, Plaintiff Stublensky has suffered the damages outlined in paragraph 55 above.

### COUNT IV-- MELCRA AGE DISCRIMINATION
### (DISPARATE TREATMENT)

83. Plaintiff Stublensky incorporates his above Parties, Jurisdiction, and Venue Allegations, his Factual Allegations, his Count I Allegations, his Count II Allegations, and his Count III Allegations into his Count VI Allegations by reference.

84. At all relevant times, under the MELCRA, MCL 37.2101 et seq., Plaintiff

11

Stublensky was an employee, and Defendant GMC was an employer.

85. At all relevant times, Defendant GMC acted through managers and supervisors as its agents.

86. As an employee above age 40 age discrimination target and victim, Plaintiff Stublensky belonged to a protected group.

87. Under respondeat superior, Defendant GMC is liable for its agents' discrimination.

88. Defendant GMC's actions were intentional.

89. In contrast to at least one similarly situated below age 40 employee, Plaintiff Stublensky experienced disparate treatment from Defendant GMC based on his age.

90. Defendant GMC, through its agents, managers and supervisors, treated Plaintiff Stublensky differently from other similarly situated employees below age 40 employees regarding their work environment and other employment policies, practices, terms and conditions based on unlawful consideration of Plaintiff Stublensky's age.

91. As proximate results of Defendant GMC's unlawful MELCRA disparate treatment age discrimination, Plaintiff Stublensky has suffered the damages outlined in paragraph 55 above.

## CONCLUSION

THEREFORE, PLAINTIFF PHILLIP STUBLENSKY respectfully requests this Court to:

A. Find in his favor.

B. Award him compensatory damages.

C. Award him exemplary damages.

D. Award him litigation and statutory attorney fees, costs, and interest.

E. Grant him further relief in accordance with principles of equity and justice.

Dated: July 10, 2026

/s/ Howard Yale Lederman
LEDERMANLAW, PC
BY: Howard Yale Lederman (P36840)
Attorneys for Plaintiff
838 West Long Lake Road, Suite 100
Bloomfield Hills, Michigan 48302
(248) 792-0476
hledermanlaw@gmail.com

## DEMAND FOR JURY TRIAL

PLAINTIFF PHILLIP STUBLENSKY, by his undersigned counsel,

LEDERMANLAW, PC, demands a jury trial on all his above claims.

Dated: July 10, 2025

/s/ Howard Yale Lederman
LEDERMANLAW, PC
BY: Howard Yale Lederman (P36840)
Attorneys for Plaintiff
838 West Long Lake Road, Suite 100
Bloomfield Hills, Michigan 48302
(248) 792-0476
hledermanlaw@gmail.com

## LIST OF EXHIBITS

Exhibit 1, GMC Website Headquarters Address Document & Michigan Department of Licensing and Regulatory Affairs Corporate Search Document.

Exhibit 2, 2/7/25 Plaintiff Stublensky EEOC Claim No. 471-2025-02731.

13

Exhibit 3, 11/21/24 EEOC Claim No. 471-2025-01086 Right to Sue Notice.

Exhibit 4, GMC Anti-Harassment Policy.

stublenskyp\complaint 07 01 26